**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **Kari L. D. Fisher,**<br>　　　　　　Plaintiff,<br><br>　　　　　v.<br><br>**Scott Bessent,** Secretary of Treasury,<br>　　　　　　Defendant. | Case No. 23-cv-00329 (CRC) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kari L.D. Fisher, an attorney with the Internal Revenue Service, filed two separate pro se lawsuits against the Secretary of the Treasury in her official capacity based on a laundry list of work-related grievances spanning over two decades.  The complaint in the first case laid out 349 paragraphs of allegations over 121 pages.  See Am. Compl., ECF No. 3, 23-cv-329.  The one in the second case was even longer, clocking in at 561 paragraphs and 152 pages. See Am. Compl., ECF No. 4, 23-cv-3303.  Each of the two complaints listed the statutes Fisher was suing under, but neither organized the sprawling allegations into separate causes of action corresponding to those statutes.  In response to a motion by the government to dismiss both complaints for failing to present a "short and plain" statement of Fisher's claims as required by Federal Rule of Civil Procedure 8(a), the Court held a status conference at which it advised Fisher on how she might cure the most obvious shortcomings in the two overlapping pleadings. The Court then ordered Fisher to file a single consolidated complaint.  Four months later, Fisher did so.  See 2d Am. Compl., ECF No. 23, 23-cv-329.  Unfortunately, the present complaint is little more wieldy than the first two.  It does delineate causes of action under six statutes.  But its 802 paragraphs still read more as a 20-year diary of affronts and injustices than actionable federal claims.

The government again moves to dismiss the complaint in its entirety under Rule 8(a)(2). Alternatively, it moves to strike extraneous material, including some 449 paragraphs that describe allegations concerning events that took place before Fisher began to pursue administrative exhaustion requirements, and to dismiss for failure to state a claim, or for summary judgment on, all claims based on the remaining, exhausted allegations.

For the reasons explained more fully below, the Court declines to dismiss the complaint under Rule 8(a). While Fisher largely ignored much of the Court's guidance to streamline the complaint, the Court is able, after considerable effort, to delineate her claims and determine the extent to which her prolix factual allegations support them. The Court will, however, grant the government's motion to dismiss under Rule 12(b)(6) as to the bulk of Fisher's claims, with two exceptions: first, retaliation claims brought under several statutes, and second, a Title VII discrimination claim related Fisher's non-selection for a position in March 2021. Fisher has adequately plead these claims, so they may proceed to discovery. The Court declines to entertain the government's alternative motion for summary judgment on the surviving claims prior to any discovery.

I.    **Background**

    A.  Factual Background

The Court draws the following background from the lengthy allegations in the complaint, which the Court accepts as true for present purposes. The IRS no doubt disputes most of the alleged facts.

Ms. Fisher alleges that she suffered various forms of employment discrimination during her more than twenty-year tenure as an attorney in the agency's Income Tax and Accounting Division. See 2d Am. Compl. ¶¶ 9–706. She alleges that her colleagues and supervisors

discriminated and retaliated against her based on numerous protected bases, including age, disability, national origin, race, sex, genetic information, and other statutory premises. Id. ¶ 1. The Court need not recount the events Fisher alleges to have occurred prior to October 3, 2017—which, as explained below, were not administratively exhausted—except insofar as Fisher contends that they constitute a pattern of discrimination or workplace hostility.

### 1. Pre-2017 Allegations

The Court begins with conduct that Fisher did not administratively exhaust but that she now claims demonstrates a continuing pattern of discrimination or hostility on the part of her supervisors and colleagues.

Soon after she joined the IRS in 2001, Fisher's first supervisor reportedly asked her probing questions about her qualifications, told her that he only expected "4 hours a day" from her, and suggested that the job "had not worked out" for other women. Id. ¶¶ 25–26, 28–29. Five years later in 2006, Fisher says a colleague sarcastically told her to "enjoy her 'vacation'" prior to her going on extended maternity leave. Id. ¶ 93. Two years after that, in 2008, Fisher recounts colleagues gossiping that "she was a lazy woman who just wanted a free day with her kids [and] was trying to manipulate the system[,]" a rumor that she says recirculated in subsequent years. Id. ¶¶ 125–26, 140–41. She further claims that a male colleague—who was "openly rude, demeaning, belittling and hostile" to her for years—and his friends "retaliated" against her by "sabotaging" her chances for a promotion by including "disparaging" statements in supervisory reports. Id. ¶¶ 156–64, 172–76. Jumping to 2013, when Fisher received a performance award, co-workers allegedly insinuated that "she slept her way to [the award]." Id. ¶ 235. Fisher also describes further rumors and harassment by colleagues regarding her supposed breast implant surgery. Id. ¶¶ 254–55, 265, 270 (A colleague "look[ed] at her

chest . . . and then laugh[ed] in her face (about the false rumors [Fisher] had recently had breast augmentation),” while another asked her about “a pole dancer” who “took a tax deduction for [breast] surgery[,]” and another “perpetuated . . . rumors that Plaintiff had breast augmentation[.]”).  She claims other colleagues continued to stare at her chest to assess whether these rumors were true.  Id. ¶¶ 267–68, 273–74.

Rumors persisted in 2015 according to Fisher, including that “she slept with executives to get [a] detail [assignment],” generally “ran after every man and woman,” and got “plastic surgery” to further her “relationships with executives[.]” Id. ¶¶ 308, 312, 314, 316–19, 357–58, 375, 394–95, 401.  She recounts colleagues also discussing her choice in underwear.  Id. ¶ 381.

 In 2016, coworkers reportedly continued to ask her about cosmetic surgery and, though Fisher does not specify the details, allegedly sexually harassed her.  Id. ¶¶ 404, 408, 411, 425. And in 2017, Fisher claims that colleagues would sometimes stick their behinds, chests, and crotches out at her as she walked by.  Id. ¶¶ 479–80.

### 2. Administratively Exhausted Allegations

Moving to allegations that Fisher included in various equal employment opportunity (“EEO”) complaints to the agency, in the fall of 2017, Fisher received multiple personnel reports that she described as “derogatory,” “discriminatory,” and “factually incorrect[.]”  Id. ¶¶ 473, 475. She later sought EEO counseling, which led to the first in a series of internal EEO claims that ultimately wound up before the Equal Employment Opportunity Commission (“EEOC”).  This initial claim resulted in EEOC Case 570-2019-00531X (“Case 1”).  Id. ¶ 474.  In the same year, Fisher alleges she was harassed by IRS security guards.  She says they would ask her to remove her prescription sunglasses upon entering the building and “bend over with butt in the air” as she passed by.  Id. ¶¶ 478–79.  She also claims that they accused her of being biased against people

with accents.  Id. ¶ 482.  Other colleagues reportedly would thrust their chests or crotches at Fisher while walking by.  Id. ¶ 480.

The next year, 2018, Fisher says her supervisors scrutinized her work "unfairly" and made "adverse decisions" on matters she worked on.  Id. ¶ 489.  Fisher responded with additional EEO claims, resulting in EEOC Case 570-2019-01083X ("Case 2") and EEOC Case 570-2020-00010X ("Case 3").  Id. ¶ 491.  In that same year, she alleges that supervisors passed her over for several senior roles, instead choosing a male colleague for one, and that she was issued another "derogatory" performance appraisal.  Id. ¶¶ 497, 499.  Fisher also received a negative final agency decision as to Case 1 in 2018.  Id. ¶ 504.

In 2019, Fisher maintains that the IRS "intentionally denie[d] [her] advance leave" to care for her child with disabilities, forcing her to take leave without pay.  Id. ¶ 513.  She further asserts that supervisors "scrutinized" her medical leave and timesheets and, on one occasion, required her to notify management by email when she began and ended the workday.  Id. ¶¶ 517–18.  They also allegedly reprimanded her over time and attendance and restricted her ability to telework, to take annual and medical leave, and to obtain credit hours.  Id. ¶¶ 522–27.  Fisher received negative final agency decisions as to Cases 2 and 3 in 2019, id. ¶¶ 510, 529, as well as a "less than appropriate" performance award.  Id. ¶ 532.

Fisher describes similar conduct in 2020.  She claims she was denied advance medical leave and forced to take leave without pay.  Id. ¶¶ 533–34.  She also alleges that she was restricted from using work time to handle her initial EEO cases, which had been transferred to the EEOC by then, as well as other complaints.  Id. ¶¶ 537, 542, 546, 559.  Fisher then filed another EEO claim, EEOC No. 570-2021-00669X ("Case 5").  Id. ¶ 549.  Fisher further recounts

being prevented from applying to or rejected from multiple roles. She also received unfavorable agency decisions as to EEO Cases 4 and 5 in 2020. Id. ¶¶ 550–53, 562.

Similar conduct continued in 2021 according to Fisher. She claims she was not selected for a front office detail, leading to EEOC No. 570-2021-01306X ("Case 6"). Id. ¶¶ 563–64. And later that year, she alleges she was either not selected for or was denied the ability to apply for several senior positions. Id. ¶¶ 567–69, 590. She also received unfavorable final agency decisions as to Cases 5 and 6. Id. ¶¶ 572, 586. Fisher further alleges that, in this timeframe, the IRS intentionally failed to her process wage discrimination claims and to report certain of her claims to Congress as required. Id. ¶¶ 580–81. Fisher filed another EEO counseling form, which led to another EEO action, EEOC No. 570-2022-01287X ("Case 7"). Id. ¶ 587. Fisher goes on to state that colleagues mocked her gender and Scandinavian ancestry by intentionally mispronouncing her name as late as 2021. Id. ¶ 591. Fisher also claims to have been denied caregiver leave, id. ¶ 593, and "harassed" about work assignments on multiple occasions throughout late 2021. Id. ¶ 601.

Fisher claims that in 2022, she was not selected for at least ten different roles at the IRS, Id. ¶¶ 605–13, 622, 639, and that her supervisors made "derogatory" statements about her in denying at least some of these promotions. Id. ¶ 614. Later that year, she asserts that supervisors denied her the ability to work credit hours, obtain advance leave, and work a flexible schedule. Id. ¶¶ 618–19, 621. Fisher filed another EEO counseling request in August 2022 ("Case 8"). Id. ¶ 633. And she broadly alleges that throughout 2022, she was "treated differently on official personnel matters because of her requests and use of official time for EEO matters." Id. ¶ 652.

2023 was much the same, according to Fisher. She recounts being denied credit hours for EEO hearings and passed over for several promotions. Id. ¶¶ 654, 656–57, 661–62, 670–71.

She was also reportedly denied accommodations for COVID-19-related telework and received critical feedback about missed deadlines.  Id. ¶¶ 664, 667, 674.  In July, Fisher filed another internal EEO action ("Case 9").  Id. ¶ 685.

       B.  Procedural Background

Fisher filed this case in February 2023, Compl., ECF No. 1, and amended her complaint in April 2023 with additional allegations, Am. Compl., ECF No. 3.  As noted, the amended complaint spanned 121 pages.  Fisher then filed a second suit against the agency in November 2023, which was assigned to the undersigned as a related case.  She then filed a 152-page amended complaint in that case in December 2023.  See Am. Compl., ECF No. 4, 23-cv-3303.  As only partially described above, the complaints recounted a long series of often overlapping grievances over Fisher's treatment and working conditions during the entirety of her 24-year tenure as an attorney with the IRS.

     After the government moved to, among other things, strike the complaint in this case under Rule 8(a), the Court convened a status hearing in February 2024.  See Tr. of Status Conference, ECF No. 20.  At the hearing, the Court observed that it was very difficult to line up the two complaints' discursive allegations with their claims for relief.  It also offered Fisher some general guidance on what types of employment discrimination claims are actionable in federal court.  The Court also raised the issue of exhaustion of administrative remedies.  Without making any findings on the issue, the Court noted that some of Fisher's allegations dated back to 2001, advised Fisher that it could only consider exhausted claims, and suggested that she clearly identify which of her allegations she pursued through her various EEO complaints.  The Court then indicated that it would consolidate the two cases and directed Fisher to file a single, consolidated complaint that adhered to the Court's guidance.  After receiving two extensions,

Fisher filed the present complaint in July 2024, and the government moved to dismiss, or alternatively for summary judgment, in November 2024.  Following a motion for discovery from Fisher, the Court informed the parties that it would not address the government's alternative request for summary judgment without giving Fisher an opportunity to conduct discovery on any disputed facts that remained following a ruling on the government's motion to dismiss and motion to strike.  Min. Order, Apr. 10, 2025.  The Court now takes up these motions.

## II.    Legal Standards

The Court will recite the legal standards applicable to the government's various motions in its respective analysis of each.  With respect to all the motions, "the pleadings of pro se parties are to be 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers[.]'"  Tyson v. Brennan, 277 F. Supp. 3d 28, 35 (D.D.C. 2017) (second alteration in original) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)).  Courts assess pro se litigants' complaints "in light of all filings, including filings responsive to a motion to dismiss," such as the opposition to the motion and any attached documents.  Ho v. Garland, 106 F.4th 47, 50 (D.C. Cir. 2024) (quotation marks omitted) (quoting Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam)).  However, "the liberal pleading standard for pro se litigants does not invariably apply when the litigant is a licensed attorney," like Fisher.  Spence v. United States Dep't of Veteran Affs., 109 F.4th 531, 538 (D.C. Cir. 2024).  When plaintiffs are knowledgeable lawyers, courts do not give them "all the benefits of the liberal standards that are afforded to *pro se* litigants[.]"  Richards v. Duke Univ., 480 F. Supp. 2d 222, 235 (D.D.C 2007).

## III.    Analysis

Fisher's consolidated complaint includes eight counts. Count I alleges violations of the Federal Equal Pay Act ("Equal Pay Act"). 2d Am. Compl. ¶ 744. Count II alleges, among other things, discrimination based on sex, pregnancy, sexual orientation (heterosexual), caregiver status, race (white), eye color (blue), hair color (blonde), religion (Lutheran), and national origin (European and Scandinavian) under Title VII. Id. ¶¶ 751–54. Count III alleges retaliation on the same bases under Title VII. Id. ¶ 759. Count IV alleges a hostile work environment and harassment on the same bases under Title VII. Id. ¶ 764. Count V alleges harassment, discrimination, and retaliation under the Age Discrimination in Employment Act ("ADEA"). Id. ¶¶ 773, 776. Count VI alleges discrimination, harassment, and retaliation under the Genetic Information Nondisclosure Act ("GINA"). Id. ¶¶ 782–83, 785. Count VII alleges harassment, discrimination, and retaliation under the Rehabilitation Act and the Americans With Disabilities Act ("ADA"). Id. ¶¶ 792, 794–95. Finally, Count VIII alleges violations of Fisher's constitutional rights pursuant to 42 U.S.C. § 1983. Id. ¶ 801.

    A.  Rule 8(a) Motion to Dismiss and Rule 12(f) Motion to Strike

Rule 8(a) of the Federal Rules of Civil Procedure requires complaints to contain "(1) a short and plain statement of the grounds for the court's jurisdiction [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); see Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). "[I]f a complaint fails to comport with the standards of Rule 8, the court may dismiss the pleading or the action." Jiggetts v. District of Columbia, 319 F.RD. 408, 413 (D.D.C. 2007) (citing Fed. R. Civ. P. 41(b)). The Court also "may strike from a pleading" material that is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). "'The decision to grant or deny a motion to strike is vested in the trial judge's sound discretion' . . . [h]owever, a motion to strike is a drastic remedy that courts

disfavor." Gates v. District of Columbia, 825 F. Supp. 2d 168, 169 (D.D.C. 2011) (quoting Naegele v. Albers, 355 F. Supp. 2d 129, 142 (D.D.C. 2005)).

Fisher's consolidated complaint remains exceedingly long. In many respects, this case mirrors another recent employment discrimination case in this district, Spence v. United States Dep't of Veterans Affs., where an experienced lawyer, filing pro se, submitted lengthy complaints in repeated violation of the judge's instructions regarding page limits. No. 19-cv-1947 (JEB), 2022 WL 3354726, at *1 (D.D.C. Aug. 12, 2022), aff'd, 109 F.4th 531 (D.C. Cir. 2024). There, after the plaintiff made five bids to amend her complaint, that Court dismissed a count of her complaint for violating Rule 8(a). Id. at *12. The D.C. Circuit affirmed the dismissal, finding the relevant complaint "neither short nor plain[.]" Spence, 109 F.4th at 539, 542.

Like the plaintiff in Spence, Fisher is an experienced lawyer. See 2d Am. Compl. ¶ 23. Counting both cases Fisher filed, the present complaint is her fifth before the Court. See Tr. of Status Hearing, ECF No. 20 at 6; see also Pl.'s Opp'n to Mot. to Strike, ECF No. 31, at 3 ("Pl.'s Opp'n"). And the Court previously walked Fisher through how to comply with Rule 8. See Tr. of Status Hearing at 6–7. As the Government observes, Fisher's instant "130-page [c]omplaint relays a confused and rambling narrative . . . spanning a period of twenty years." Def.'s Mot. at 21. Accordingly, the Court would be well within its discretion to dismiss Fisher's complaint without prejudice on Rule 8(a) grounds.

Yet, the decision to grant a motion to dismiss on 8(a) grounds is "largely a matter for the trial court's discretion[.]" Ciralsky v. CIA, 355 F.3d 661, 669 (D.C. Cir. 2004). And since the Court has been able to mostly untangle Fisher's allegations and legal claims—and did not impose a specific page limit on Fisher or give her a "final opportunity" to shorten her complaint

as in Spence, 2022 WL 3354726, at *1—the Court will exercise its discretion to reach the substance of Fisher's claims.

The Court also declines to strike material from the complaint under Rule 12(f).  While the Court could do so, this remedy is "disfavored."  See Uzlyan v. Solis, 706 F. Supp. 2d 44, 51 (D.D.C. 2010).  Furthermore, "[c]ourts in this circuit strongly favor resolution of disputes on their merits," Smith v. Wash. Post Co., 962 F. Supp. 2d 79, 84–85 (D.D.C. 2013) (citing English-Speaking Union v. Johnson, 353 F.3d 1013, 1021 (D.C. Cir. 2004)), striking material only when motions or claims are "prejudicial or scandalous."  Id. at 84 (citing Nwachukwu v. Karl, 216 F.R.D. 176, 178 (D.D.C. 2003)).  Given this preference, and because the claims are not themselves inappropriate, the Court will work with the complaint as is.[1]

B.  Rule 12(b)(6) Motion to Dismiss

A court deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  Am. Nat. Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).  To survive a motion to dismiss for failure to state a claim under 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible if the pleaded facts allow the court to reasonably infer that the defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678.  While a court must take the complaint's factual allegations as

---

[1] As explained later, however, the Court will require Fisher to file an amended complaint that omits the allegations and claims that are subject to dismissal.

true, it need not accept legal conclusions, and mere "labels" or "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

### 1. Failure to Exhaust Claims

The government first argues that all of Fisher's claims should be dismissed to the extent they are based on allegations that she did not raise in her multiple administrative EEO complaints. To proceed with discrimination and retaliation claims under Title VII and the ADEA, plaintiffs must exhaust administrative remedies before filing suit. Coleman v. Duke, 867 F.3d 204, 206 (D.C. Cir. 2017). Failure to exhaust is properly raised in a 12(b)(6) motion. See Deppner v. Spectrum Health Care Resources, Inc., 325 F. Supp. 3d 176, 183 (2018).

To initiate the required administrative process, plaintiffs must contact an agency EEO representative within 45 days of the purported violation. 29 C.F.R. § 1614.105(a)(1). Fisher first sought EEO counseling on November 17, 2017. Yet, Fisher's complaint discusses matters dating back to 2001, nearly *sixteen* years before then. 2d Am. Compl. ¶¶ 23, 474. This delay is well in excess of the 45-day limit, and Fisher does not appear to address the unexhausted nature of her Title VII, ADEA, Rehabilitation Act, and GINA claims; she discusses exhaustion only as to her Equal Pay Act claims. Pl.'s Opp'n at 6. Even construing Fisher's response to the Equal Pay Act claims to cover her Title VII and ADEA claims, her bare assertion that her "[c]laims are not time-barred," id., is not a sufficient response. Given that she proffers no alternative explanation for her failure to raise these issues previously, all of her claims are unexhausted to the extent they are based on alleged conduct that occurred prior to October 3, 2017—45 days before her first counseling request. The Court will therefore disregard the allegations laid out in paragraphs 23

through 474 as they pertain to her claims under Title VII, the Equal Pay Act, the ADEA, the Rehabilitation Act, and GINA.[2]

Fisher tries to salvage these claims by arguing that the continuing violations doctrine allows her to bootstrap conduct dating back to 2001. Not so. The continuing violations doctrine does not accommodate "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire," but rather actions "over a series of days or perhaps years[.]" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114, 115 (2002). The vast majority of Fisher's claims concern non-selections and other discrete adverse personnel actions. A single refusal to promote is just that. It is not a series of actions over a sustained period.

Fisher does advance hostile work environment claims, however, which "are different in kind from discrete acts because their very nature involves repeated conduct." Baird v. Gotbaum, 662 F.3d 1246, 1251 (D.C. Cir. 2011) (cleaned up) (quoting Morgan, 536 U.S. at 115). As the Supreme Court noted in Morgan, a "single act" within the statutory time period which tends to support a hostile work environment claim allows a court to consider the "entire time period of the hostile environment." 536 U.S. at 117. Even so, unexhausted claims may only survive "if they are adequately linked into a coherent hostile environment claim—if, for example, they 'involve[ ] the same type of employment actions, occur[ ] relatively frequently, and [are] perpetrated by the same managers.'" Baird, 662 F.3d at 1246 (alterations in original) (quoting Morgan, 536 U.S. at 120–121). As noted, Fisher describes dozens of purported rumors and innuendos about her relationships, work performance, and physical appearance between 2001

---

[2] GINA was enacted in 2008 and went into effect 18 months later. 42 U.S.C. § 2000ff note (2008). It contains no retroactivity provision. See 42 U.S.C. § 2000ff. Even if her GINA claims were exhausted, she could not bring a claim under the statute for any actions prior to November 21, 2010.

and 2021.  See, e.g., 2d. Am. Compl. ¶¶ 82–83, 113, 125, 125 n. 5, 140–41, 230, 235, 251, 252,

254–55, 263, 265, 267, 269, 276, 291, 307–08, 310, 312, 314–15, 318–19, 338, 342, 344, 346–

47, 349–51, 357–58, 361, 364, 373–75, 380–82, 384, 391, 393, 403, 411, 418, 423, 429, 461,

543.  She does not, however, allege a rumor or other conduct after 2017 that forms a coherent

series of hostility along with the earlier allegations.  In fact, the only relevant conduct Fisher

alleges after August 2017 (the earliest date of administrative exhaustion) concerns unspecific

"rumors" and gossip about her character following her unsuccessful attempts to obtain a key to

an office bay in her branch.  See id. ¶ 543.  Since this lone incident within the post-August 2017

period is unrelated to earlier rumors, it does not establish a continuing pattern of workplace

hostility.  Accordingly, her unexhausted allegations concerning the earlier incidents cannot be

considered in assessing Fisher's hostile work environment claim.

    The Court now considers whether what remains of Fisher's eight counts state claims

upon which relief can be granted.

### 2.  Count I (Federal Equal Pay Act)

    Fisher brings Count I under the Equal Pay Act alleging that she was underpaid compared

to her male counterparts.  Yet, the law in this Circuit is that "the Court of Federal Claims retains

exclusive jurisdiction over federal sector claims exceeding $10,000 under the Fair Labor

Standards Act ("FLSA")—which includes the Equal Pay Act[.]"  Owens v. Thompson, No. 23-

cv-662 (TSC), 2024 WL 1328461, at *4 (D.D.C. Mar. 28, 2024) (citing Waters v. Rumsfeld, 320

F.3d 265, 270–72 (D.C. Cir. 2003)).[3]

---

[3]  As the Government acknowledges, Def.'s Mot. at 24–26, this and other courts in this
district have rejected the argument that the Supreme Court's decision in U.S. v. Bormes, 568 U.S.
6 (2012), overturned controlling D.C. Circuit precedent on this question.  See Owens, 2024 WL
1328461, at *4; Adair v. Bureau of Customs & Border Prot., 191 F. Supp. 3d 129 (D.D.C. 2016)
(Cooper, J).  And while the Government did not ask the Court to dismiss for lack of subject

While Fisher has not specified that she seeks more than $10,000 in damages, she states that she lost $1,543 during her first year at the IRS due to a pay disparity.  2d Am. Compl. ¶¶ 45, 47.  Extrapolating this calculation over the two-plus decades she has worked at the IRS would produce a sum well beyond the Tucker Act's $10,000 limit for retaining jurisdiction in this Court.  Fisher has also requested an unspecified, but likely significant, amount in damages and has not parsed out the Equal Pay Act claims from her other claims.  See id. at 128.  To sustain an action in district court, plaintiffs must "clearly and adequately" waive claims over the $10,000 limit.  Waters, 320 F.3d at 271 (quoting Goble v. Marsh, 684 F.2d 12, 17 (D.C. Cir. 1982)).  Fisher has not done so.  Lacking jurisdiction, the Court will transfer Fisher's Equal Pay Act claim to the Court of Federal Claims.[4]

### 3.  Count II (Title VII Discrimination)

To state a discrimination claim under Title VII, "a plaintiff must allege she is part of a protected class under [the statute], she suffered a cognizable adverse employment action, and the action gives rise to an inference of discrimination."  Walker v. Johnson, 798 F.3d 1085, 1091 (D.C. Cir. 2015) (citing Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002)).  "Although Plaintiff need not plead all the elements of a prima facie case of discrimination [at the motion to dismiss stage], the factual allegations in the Complaint must give rise to a plausible inference of discrimination. The pleading standard 'cannot be reduced to a mechanical formula; it is sensitive

---

matter jurisdiction, a court must dismiss actions or claims if it "determines at any time that it lacks subject-matter jurisdiction."  Fed. R. Civ. P. 12(h)(3).

[4]  Because it lacks subject-matter jurisdiction, the Court will not address the substance of the Equal Pay Act claims, though it suspects they have run afoul of the applicable statute of limitations.  See Guerrero v. Vilsack, 134 F. Supp 3d 411, 428 n.16 (D.D.C. 2015) (noting that Equal Pay Act violations must be brought within, at most, three years of the violation).

to the specific context of each case' but, overall, 'is not onerous.'"  Bilal v. Metro. Police Dep't,
No. 25-cv-189 (JEB), 2025 WL 1917959, at *3 (D.D.C. July 11, 2025) (cleaned up).

A plaintiff can provide the necessary allegations in several ways.  First, she can allege
direct proof of discrimination, such as remarks indicating bias in the employment process.  See
Wilson v. DNC Servs. Corp., 315 F. Supp. 3d 392, 400 (D.D.C. 2018).  Second, absent direct
evidence of discrimination, she can offer indirect evidence that would allow the Court to infer
that the discrimination drove the adverse employment action.  See Bilal, 2025 WL 1917959, at
*3 (citing Conn v. Am. Nat'l Red Cross, 149 F. Supp. 3d 136, 147 (D.D.C. 2016)).  And third,
she may state a claim by showing that she was treated differently from similarly situated
employees outside her protected class.  Brown v. Sessoms, 774 F.3d 1016, 1022 (D.C. Cir. 2014).
"A plaintiff proceeding on [] a comparator theory must plead enough facts about those
comparators and the relevant context to allow a plausible inference that [s]he was treated
differently because of" her protected status.  Joyner v. Morrison & Foerster LLP, 140 F.4th 523,
530 (D.C. Cir. 2025).  "While the burden is 'not onerous' at the motion-to-dismiss stage, it
requires more than the bald assertion that there is a similarly situated comparator."
Hollingsworth v. Vilsack, No. 23-cv-2427 (LLA), 2024 WL 4332118, at *10 (D.D.C. Sep. 27,
2024) (citation omitted).

As explained below, Fisher's lengthy complaint contains almost no successful allegations
of Title VII discrimination, but she does state one claim that survives the agency's motion to
dismiss.

Fisher does claim generally that her gender, sexual orientation, national identity, and race
were the reasons for her treatment.  2d. Am. Compl. ¶ 751.  And she describes a number of

events that qualify as adverse employment actions, including non-selection for promotion and lost benefits.  E.g., Id. ¶¶ 497, 499, 590, 593, 752.

By and large, however, Fisher does not plead facts that give rise to an inference of discrimination for most of those adverse outcomes.  To begin, she does not plead any facts that are proof of direct evidence of discrimination.  At no point does she offer statements or other conduct by superiors or colleagues made directly in relationship to the various adverse employment actions that would indicate "bias in the employment process."  Wilson v. Cox, 753 F.3d 244, 247 (D.C. Cir. 2014).

Likewise, she does not in the main recount statements from managers or other surrounding circumstances that would constitute indirect evidence of discrimination.  She rarely provides any context for comments made by managers that might give rise to an inference of discrimination, such as "when these comments were made or how they were connected to [an adverse action]."  Bilal, 2025 WL 1917959, at *4.   Rather, among her exhausted claims, she largely pleads generic concerns, like receiving derogatory performance reviews.  E.g., 2d Am. Compl. ¶¶ 473, 614.  This sort of general pleading is not sufficient for a factfinder to infer that discrimination influenced the vast majority of her adverse employment actions.  And when Fisher does indicate specific problematic conduct—such as colleagues harassing her—she does not draw a link between that behavior and any adverse employment action.  See id. ¶¶ 479–80.  The Court is therefore unable to conclude that Fisher has pled facts that, if true, would constitute discrimination for most of her adverse employment actions.

Consider the following allegation, which while more developed than most, illustrates the flaws in much of Fisher's pleading.  Fisher alleges that just before Christmas in 2017, a "scene was staged by two co-workers," one of whom was Paul Carlino, a manager.  2d Am. Compl. ¶

481.  She alleges that a security guard who apparently was enlisted to participate in this "sting" operation" mentioned she had an accent, which Fisher somehow interprets as an accusation of her "having biases," thus "putting national origin, etc. into play."  Id.  ¶ 482.  Later, at the end of the year, she was allegedly denied a performance award.  Id. ¶ 485.  But, even if the security guard's conduct could be construed as implicating Fisher's national origin, she draws no connection between these events.  Nor does she specify what Carlino's role was in the "sting," or even that he harassed her at all.  She also does not allege that he played a role in denying her a performance award.  With no linkage between the manager's conduct and the denial of the performance award, the allegation fails to state a plausible claim of discrimination.

Fisher does, however, successfully plead discrimination as to one adverse employment action.  At the end of March 2021, Fisher learned she was not selected for an Assistant Branch Manager role for which she applied.  Id. ¶ 569.  She notes that the selection board for the position included a managed named Roy Hirschhorn.  Id. ¶ 571.  Elsewhere in the complaint, Fisher implicates Hirschhorn in her gender-based harassment.  Id. ¶¶ 209, 296, 308, 335, 384.  Because the Court may consider "prior acts as background evidence in support of a timely claim," Hirschhorn's alleged previous behavior gives rise to an inference of gender-based discrimination concerning Fisher's non-selection for the Assistant Branch Manager position.  Nat'l R.R. Passenger Corp., 536 U.S. at 114.

Finally, Fisher gestures towards a comparator theory of discrimination when alleging that a man was selected over her for a Branch Chief position in 2018.  Id. ¶ 493.  But any such theory fails.  To survive a motion to dismiss on a comparator theory, a complaint must "contain[] allegations that a comparator was similarly positioned to the plaintiff in at least some relevant respects, and include[] enough detail [to] plausibly infer that discrimination caused the

defendant's differential treatment[.]"  Joyner, 140 F.4th at 531.  Here, Fisher has not alleged the requisite similarities to her male counterpart.  To the contrary, Fisher indicates that her comparator was a GS-15 employee, while she was a GS-14., 2d Am. Compl. ¶ 493; id. ¶ 12, which suggests he was more qualified for the position.

Fisher accordingly fails to state a Title VII discrimination claim, except as to her rejection for the Assistant Branch Manager role in March 2021.

### 4.  Count III (Title VII Retaliation)

By contrast, Fisher pleads sufficient facts, at least at this early stage of the case, to permit an inference that she suffered retaliation as a result of her having lodged discrimination complaints with the agency.  To state a Title VII retaliation claim, a plaintiff must allege that (1) she opposed a practice unlawful under Title VII; (2) her employer took a materially adverse action against her; and (3) the action was taken "because" of the opposition.  McGrath v. Clinton, 666 F.3d 1377, 1380 (D.C. Cir. 2012); see also Abdelhamid v. Lane Constr. Corp., 744 F. Supp. 3d 10, 23 (D.D.C. 2024).  In the retaliation context, an adverse action includes more than "actions that affect the terms and conditions of employment[,] [including acts that] might have dissuaded a reasonable worker from making or supporting a charge of discrimination[.]"  Baird, 662 F.3d at 1249 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64, 68 (2006)).  To satisfy the causal element of a retaliation claim, a plaintiff must show that her employer knew about her protected activity and took the adverse action "shortly after that[.]"  Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985).  "Causation may be inferred—especially at the pleading stage—when the retaliatory act follows close on the heels of the protected activity."  Scahill v. District of Columbia, 271 F. Supp. 3d 216, 236 (D.D.C. 2017) (cleaned up) (citation omitted).  However, courts require "very close" temporal proximity between an

employer's knowledge of protected activity and an adverse employment action for timing alone to establish causation.  Glenn v. Williams, No. 98-cv-1278 (CKK), 2006 WL 401816, at *25 (D.D.C. Feb. 21, 2006).  Courts in this circuit often adopt a "three-month rule" to assess causation on the sole basis of temporal proximity.  Hamilton v. Geithner, 666 F.3d 1344, 1349 (D.C. Cir. 2012) (citation omitted); see also McIntyre v. Peters, 460 F. Supp. 2d 125, 133 (D.D.C. 2006) (collecting cases).

Here, Fisher clearly engaged in protected activity.  "An activity is 'protected' for the purposes of a retaliation claim 'if it involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment.'"  Davis v. Gables Residential/H.G. Smithy, 525 F. Supp. 2d 87, 100 (D.D.C. 2007) (citation omitted).  Fisher lodged nine EEO complaints.  For seven of them, she sufficiently links her EEO filing to adverse personnel actions to survive a motion to dismiss.  Fisher filed Case 2 on December 10, 2018.  Def.'s Mot. at 5.  Nearly simultaneously, she received a "low amount in a performance award[.]"  2d Am. Compl. ¶ 503.  Fisher filed Case 3 on May 12, 2019.  Def.'s Mot. at 7.  The next month, she claims she was not selected for a management detail.  2d Am. Compl. ¶ 511.  Fisher filed Case 4 on June 2, 2020, and alleges she was rejected or barred from applying for two positions in June and July of that year.  Id. ¶¶ 548, 550–51.  Fisher filed Case 5 on June 4, 2020, making those same adverse actions relevant to that case as well.  Id. ¶¶ 549–51.  She filed Case 6 on February 1, 2021, and claims she was not selected for promotion three times in the next two months.  Id. ¶¶ 564, 567–69.  Likewise, Fisher filed Case 7 on October 11, 2021, and alleges she was barred from applying for several jobs over the next three months.  Id. ¶¶ 587, 590, 605.  And she filed Case 8 on August 16, 2022, and again claims she was not selected for a position

soon thereafter. Id. ¶¶ 633, 639. For Cases 1 and 9, Fisher does not allege an adverse

employment action within three months of the filing.[5]

Non-promotion and low bonus awards are both harms "that might have dissuaded a

reasonable worker" from engaging in protected activity. Baird, 662 F.3d at 1249; see also

Ramseur v. Perez, 80 F. Supp. 3d 58, 72–73 (D.D.C. 2015) (citing Taylor v. Small, 350 F.3d

1286, 1293 (D.C. Cir. 2003) ("[L]oss of bonus money because of an improperly low performance

rating may constitute an adverse employment action for the purposes of Title VII."). Having

received Fisher's EEO complaints, the IRS would have been on notice of all her claims. See 29

C.F.R. § 1614.106(a). Accordingly, considering the Hamilton three-month rule, the galaxy of

complaints, and the proximate subsequent actions, there are sufficient facts to state a claim for

Title VII retaliation as to Cases 2, 3, 4, 5, 6, 7, and 8. At the summary judgment phase, Fisher

will need to show, among other things, that the relevant decisionmakers for those employment

decisions knew about the relevant EEO complaints. See Jones v. Bernanke, 557 F.3d 670, 697

(D.C. Cir. 2009) (noting that a supervisor could "not have retaliated against [an employee] unless

they had knowledge of his protected activity").

The Government invokes McDonnell Douglas v. Green, 411 U.S. 792 (1973) to defeat

Fisher's Title VII (and ADEA) retaliation claims. Def.'s Mot. at 29. It correctly notes that to

sustain this action, Fisher must first establish a prima facie discrimination case, which shifts the

burden to the employer to rebut her claims. Def.'s Mot. at 29–30. However, "the pleading of a

prima facie case under McDonnell Douglas is not required to survive a motion to dismiss."

Chien v. Sullivan, 313 F. Supp. 3d 1, 14 (D.D.C. 2018) (citing Swierkiewicz v. Sorema N.A., 534

U.S. 506, 510–11 (2002)). This framework "generally applies at summary judgment," Easaw v.

---

[5] There is no information in the record about the allegations made in Case 9.

Newport, 253 F. Supp. 3d 22, 26 (D.D.C. 2017) (collecting cases), where the government will

have a chance to offer the IRS's rationale for the personnel decisions at issue to overcome any

prima facie case.

### 5. Count IV (Title VII Hostile Work Environment and Harassment)

Fisher does not plausibly plead that she suffered a hostile work environment.[6]  To make

out a Title VII hostile work environment claim, plaintiffs must show that they were "subjected to

discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter

the conditions of [her] employment[.]"  Brooks v. Grundmann, 748 F.3d 1273, 1276 (D.C. Cir.

2014) (internal quotation marks and alterations omitted) (citation omitted).  For these claims,

courts assess "the totality of the circumstances, including the frequency of the discriminatory

conduct, its severity, [and] its offensiveness[.]"  Baloch v. Kempthorne, 550 F.3d 1191, 1201

(D.C. Cir. 2008).

Plaintiffs generally must tie the discriminatory incidents together, as "discrete acts" are

separate from hostile work environment claims.  Lester v. Natsios, 290 F. Supp. 2d 11, 33

(D.D.C. 2003) (citing Morgan, 536 U.S. at 115–16).  "[Plaintiffs] must demonstrate some linkage

between the hostile behavior and [his or her] membership in a protected class."  Scott, 60 F.

Supp. 3d at 164 (Cooper, J.) (internal quotation marks omitted).  The behavior must be extreme

enough such that Title VII does not become a "general civility code."  Faragher v. City of Boca

Raton, 524 U.S. 775, 788 (1998) (citation omitted).

To advance her hostile work environment claim, Fisher alleges a conspiracy by

management to deprive her of promotions, pay, and leave.  Overall, Fisher's allegations read

---

[6]  Fisher pleads "ongoing harassment" as well, which the Court interprets to be the same
as her hostile work environment claim.  2d Am. Compl. ¶ 764.

more as common workplace grievances and management gripes than they do as a legally defined
hostile work environment.  Courts frequently reject hostile work environment claims where
plaintiffs raise run-of-the-mill workplace grievances.  See Faragher, 524 U.S. at 788 ("the
ordinary tribulations of the workplace" do not qualify for Title VII claims) (citation omitted).
Further, courts "have generally rejected hostile work environment claims that are based on work-
related actions by supervisors."  Arnoldi v. Bd. of Trs., 557 F. Supp. 3d 105, 121 (D.D.C. 2021).
Fisher alleges that her supervisors created a hostile work environment by, among other things,
"collaborat[ing] to unfairly scrutinize work assignments, perpetuat[ing] false narratives,
threaten[ing] discipline, and threaten[ing] to prevent [her] from receiving quality assignments."
2d. Am. Compl. ¶ 624.  Fisher provides few facts to support these general allegations.  And even
if she did provide adequate factual support, these types of work-related transgressions are
generally insufficient to support a hostile work environment claim.  See Heavans v. Dodaro, 648
F. Supp. 3d 1, 18 (D.D.C. 2022) (collecting cases); see also id. at 17 ("Courts have frequently
dismissed hostile work environment claims centered on . . . allegations of conflict with a
manager, occasional denial of privileges, changes to work duties, and close scrutiny, as such
occurrences are not sufficiently offensive, intimidating, or out of the ordinary in a typical
workplace to change the conditions of the plaintiff's employment.") (citation omitted).  As such,
Fisher fails to state a hostile work environment claim based on this series of complaints against
her supervisors.

By contrast, the complaint contains a more troubling series of allegations about alleged
spreading of rumors and innuendos related to Fisher's sexual behavior—conduct that, given
supporting evidence, could constitute a hostile work environment.  See Jew v. Univ. of Iowa, 749
F. Supp. 946, 958 (S.D. Iowa 1990) (recognizing a cause of action based on rumors of sexual

relationships that led to adverse employment actions); <u>Spain v. Gallegos</u>, 26 F.3d 439, 451–52 (3d Cir. 1994) (same).  Unfortunately for Fisher, the purported rumors along these lines date from 2001 to 2016 and are not administratively exhausted.  And as discussed, Fisher has not alleged the spreading of similar, more recent rumors that might demonstrate a continuing violation.  <u>See</u> <u>supra</u> III(B)(1).  As such, the Court cannot consider this pre-2017 conduct in assessing her hostile work environment claims.

### 6.   *Count V (ADEA Claims)*

Count V advances claims under the ADEA based on harassment, discrimination, and retaliation due to age, which was either 52 or 53 at the time the operative complaint was filed. <u>See</u> 2d. Am. Compl. ¶ 1 (noting Fisher's birth year as 1971).

### a.   <u>Harassment</u>

Fisher's ADEA harassment claim—which the Court construes as a hostile work environment claim—is insufficiently pled.  To pursue a hostile work environment claim under the ADEA, plaintiffs must show that they were "subjected to discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment."  <u>Brooks v. Grundmann</u>, 748 F.3d 1273, 1276 (D.C. Cir. 2014); <u>see</u> <u>McArdle v. District of Columbia</u>, 19-cv-3637 (JMC), 2025 WL 1167956, at *8 (D.D.C. Apr. 22, 2025) (discussing cases and applying Title VII standards to ADEA actions).  This hostile work environment must take place "on account of [her] . . . age[.]" <u>Moore v. Carson</u>, 775 F. App'x 2, 3 (D.C. Cir. 2019).  Fisher alleges no facts indicating that she suffered hostile treatment due to her age.[7]  Indeed, the word "age" is mentioned only six times in

---

[7] Fisher briefly describes a 2016 comment from Duke Osborne, a co-worker, about the hereditary nature of schizophrenia and notes that Mr. Osborne later emailed her to share

her lengthy complaint, and five of the references are in conclusory listings of statutes or claims. Thus, the complaint on its face does not permit the inference of either an abusive work environment or a severe or pervasive burden on Fisher's employment based on her age. Fisher therefore fails to state an ADEA hostile work environment claim.

### b. Discrimination

Fisher has not plausibly alleged an ADEA discrimination claim either. "To state an age discrimination claim under the ADEA, a plaintiff must establish that: (i) they suffered an adverse employment action (ii) because of their age." Webster v. Burgum, No. 23-cv-3050 (RC), 2025 WL 1279355, at *5 (D.D.C. May 2, 2025) (citing Baloch, 550 F.3d at 1196–97). Again, Fisher's complaint offers only conclusory statements about her age. Further, there is no suggestion that she was denied promotions (or suffered any other adverse actions) on the basis of age. See 2d Am. Compl.; cf. Golden v. Mgmt. & Training Corp. 319 F. Supp. 3d 358, 376 (D.D.C. 2018) (permitting a claim of ADEA discrimination because the plaintiff specified younger colleagues who received lesser discipline despite similar performance). Therefore, she fails to state a claim for discrimination under the ADEA.

### c. Retaliation

By contrast, Fisher's ADEA retaliation claims are distinct from her other ADEA claims and can survive at this early stage of the case. "In the absence of direct evidence of retaliatory intent, to succeed on a claim for retaliation under . . . the ADEA, [a plaintiff] must show that [she] '1) engaged in a statutorily protected activity [related to age]; 2) suffered a materially adverse action by [her] employer; and that 3) a causal connection existed between the

---

information about the average age of its onset in women.  See 2d Am. Compl. ¶ 419.  But even if this allegation could support a viable claim, it is unexhausted.

two.'"  See Lawson v. Sessions, 271 F. Supp. 3d 119, 137 (D.D.C. 2017) (quoting Townsend v.

United States, 236 F. Supp. 3d 280, 315 (D.D.C. 2017) (citation omitted)).  This "causal

relationship can be inferred through temporal proximity between the protected act and the

adverse employment action."  Id. (quoting Townsend, 236 F. Supp. 3d at 316).  In the ADEA

context, "temporal proximity alone [can] demonstrate causation . . . although three months is

perceived as approaching the outer limit."  Greer v. Bd. of Trs. of Univ. of D.C., 113 F. Supp. 3d

297, 311 (D.D.C. 2015) (citing Hamilton, 666 F.3d 1344, 1357–58).

   Fisher can satisfy these requirements at the motion to dismiss stage.  Of Fisher's nine

EEO complaints, seven contain allegations about age discrimination.  See 2d Am. Compl. ¶¶

473, 491, 549, 564, 587, 633; Def.'s Mot. at 3, 5, 7, 9, 12, 17; Def.'s Reply at 3.  As previously

noted, Fisher has sufficiently pled retaliation claims based on seven EEO actions (Cases 2, 3, 4,

5, 6, 7, and 8) in the Title VII context due to temporal proximity.  See supra III(B)(4).  Since

these EEO actions implicate both Title VII and the ADEA, the analysis is the same here.  See

Lawson, 271 F. Supp. 3d. at 140; see also Gomez–Perez v. Potter, 553 U.S. 474, 479 (2008)

(citing Lehman v. Nakshian, 453 U.S. 156, 167, n.15 (1981)) (establishing that the ADEA's

federal-sector provision was patterned "directly after" Title VII's federal-sector discrimination

ban).  Fisher's complaint sufficiently shows temporal proximity between a qualifying protected

act related to age discrimination and a subsequent adverse employment action for all six of the

relevant claims.  Fisher will face a much higher burden at the summary judgment stage, where

she will need to show that any legitimate reasons offered by the agency for the relevant adverse

action were instead a pretext for reprisals due to her complaints of age discrimination.  But for

now, these claims may proceed.

   *7.  Count VI (GINA Claims)*

The Genetic Information Nondiscrimination Act of 2008 ("GINA") generally prohibits employers from using employees' genetic information in making employment decisions. Count VI alleges harassment, discrimination, and retaliation based on usage of protected genetic information under GINA.

At the outset, the government makes two threshold arguments that GINA does not apply to this case. First, the government argues that GINA does not apply to federal agencies. Def.'s Mot. at 32. The Court is not persuaded. GINA is codified at 42 U.S.C. § 2000ff, *et seq.* Section 200ff(2)(B) defines five types of entities that qualify as an "employer" under the statute. The first is "an employer (as defined in the Civil Rights Act of 1964 (42 U.S.C. § 2000e(b))." Id. § 2000ff(2)(B)(i). As the government emphasizes, that definition excludes "the United States." Id. § 2000e(b). But the government neglects to note that the statute proceeds to include within its definition of employer "an employing office, as defined in [3 U.S.C. § 411(c)]." Id. § 2000ff(2)(B)(iii). Section 411(c), in turn, defines an "employing office" as "the office [or] agency in which the covered employee" works. Id. § 411(c)(2). And a "covered employee" means "any employee of a unit of the executive branch." Id. § 411(c)(1). This later definition of "employer" thus sweeps executive branch agencies back within the scope of GINA, notwithstanding the earlier exclusion of "the United States" from one the statute's five definitions of "employer." While neither party cites caselaw discussing the scope of the statute's definition of employer, other courts have entertained claims against federal agencies. See Beaulieu v. Barr, No. 15-cv-896 (TJK), 2019 WL 5579968, at *3 (D.D.C. Oct. 29, 2019); Smith v. Donahoe, 917 F. Supp. 2d 562, 570–71 (E.D. Va. 2013).[8]

---

[8] Should the government disagree with the Court's definitional analysis, it can raise this issue again in a motion on the pleadings or at summary judgment.

Second, the Government argues that Title VII preempts GINA.  The Court disagrees. Title VII does provide "the exclusive judicial remedy for claims of discrimination in federal employment."  Brown v. Gen. Servs. Admin., 425 U.S. 820, 835 (1976).  However, Title VII covers discrimination on the basis of "race, color, religion, sex, or national origin[.]"  Kizas v. Webster, 707 F. 2d 524, 541–42 (D.C. Cir. 1983) (quoting U.S.C. § 2000e).  The statute does not preclude certain other types of discrimination claims.  See e.g., Coulibaly v. Kerry, 213 F. Supp. 3d 93, 152 (D.D.C. 2016) (considering a Rehabilitation Act claim in a case where there was also a Title VII claim).  GINA provides a similar remedy for claims of genetic discrimination and retaliation in federal employment.  42 U.S.C. § 2000ff-1(a)(1); id. § 2000ff-6(d)(1), (f).[9]  And since the alleged facts pertaining to Fisher's GINA claims are not covered by Title VII, these claims are not precluded.

    a.  Discrimination

Fisher does not, however, successfully plead a GINA discrimination claim.

"GINA prohibits an employer from discriminating or taking adverse actions against an employee 'because of genetic information with respect to the employee.'"  Ortiz v. City of San Antonio Fire Dep't, 806 F.3d 822, 826 (5th Cir. 2015) (quoting 42 U.S.C. § 2000ff–1(a)(1), (2)). Genetic information can take two forms.  The first is genetic tests, which the statue defines as "an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes."  Id. (quoting 42 U.S.C. § 2000ff(7)).  The

---

[9] GINA adopts enforcement remedies for federal employees.  See 42 U.S.C. § 2000ff(6)(d).  While there is no legislative history for GINA, the history for the similar 2007 edition of the bill specifies that "the Genetic Information Nondiscrimination Act of 2007 is designed to extend to individuals in the area of genetic discrimination the same procedures and remedies as are provided under Title VII[.]"  H.R. Rep. No. 110–28 at 35 (2007).

second form is information about "'the manifestation of a disease or disorder in *family members of such individual.*'"  Id. (quoting 42 U.S.C. § 2000ff(4)) (emphasis added).

Fisher never alleges discrimination on these bases.  To begin, she never mentions any genetic testing at all, so, there can be no discrimination on that basis.  As to the second possibility—the manifestation of disease or disorder in family members—the case law is sparse in defining what qualifies.  Id.  But the text of the statute is clear: it is concerned with the manifestation of disease in family members rather than the individual herself.  See 42 U.S.C. § 2000ff; see also 42 U.S.C. § 2000ff-1(b) (making it unlawful to acquire family medical history except under certain circumstances); see also EEOC, *Genetic Information Discrimination*, https://www.eeoc.gov/genetic-information-discrimination (last visited Sep. 11, 2025) ("Genetic information includes . . . information about the manifestation of a disease or disorder in an individual's family members (i.e. family medical history")).  Because Fisher does not reference the manifestation of any disease in her family members in the context of her GINA claim,[10] she has failed to state a claim under the statute.[11]  And even if she had, her complaint is devoid of facts indicating that her supervisors requested or otherwise used protected genetic information or

---

[10]  Fisher mentions having a "child with severe disabilities."  2d Am. Compl. ¶ 22.  But she does not indicate whether the disability is genetic, and she further does not in any way connect that disability to her GINA claim (by, for example, alleging that the IRS requested the child's medical information).  Cf. id. ¶ 742 (connecting her care for the disabled child to her sex discrimination claim).

[11] Here, Fisher appears to base her claim on the fact that she has blue eyes and a variety of related conditions, including dry eyes and light sensitivity.  2d Am. Compl. ¶ 516.  Those conditions, if severe enough, could support Rehabilitation Act claims, and indeed, she brings a light sensitivity claim under the Rehabilitation Act, as discussed *infra*.  Cf. Beaulieu v. Barr, 2019 WL 5579968, at *3.  (rejecting a GINA claim that appeared to be based on "ethnicity, national origin, or race," because Title VII covers those claims).

family medical history in connection with any employment decision. Thus, her GINA discrimination claim fails twice over.

b.    Harassment

Fisher likewise fails to state a claim for harassment under GINA. As with her GINA discrimination claims, conditions related to Fisher having blue eyes have nothing to do with her genetic tests or family medical history. 42 U.S.C. § 2000ff(4)(A). But even if her genetic information or characteristics could support a GINA claim, Fisher still does not plausibly demonstrate harassment on that basis as she does not allege that her colleagues or supervisors ever commented on her eye color and related medical conditions, or her family medical history. See 2d Am. Compl. ¶ 516.

c.    Retaliation

Fisher can, however, sustain claims of retaliation under GINA at this early pleading stage. No court in this district has reached the question of what a plaintiff must do to plead a GINA retaliation claim. However, the Fifth Circuit has reached this question, adopting a framework like the one the Court has applied under the statutes governing Fisher's other retaliation claims. Under the Fifth Circuit's test, a plaintiff must show that (1) "[s]he engaged in protected activity," (2) "[s]he suffered an adverse employment action," and (3) "a causal link existed between the protected activity and the adverse action." Ortiz v. City of San Antonio Fire Dep't, 806 F.3d 822, 827 (5th Cir. 2015) (quoting Davis v. Fort Bend Cnty., 765 F.3d 480, 489–90 (5th Cir. 2014)). Given the similarity between GINA and the aforementioned statutes, the Court will adopt this standard for pleading a GINA retaliation claim. Fisher meets this bar. She engaged in a protected activity, filing seven complaints implicating actions taken against her based on

genetic information.  See Def.'s Mot. at 3, 5, 7, 9, 12, 17; Def.'s Reply at 3.[12]  She allegedly

suffered adverse employment actions in close proximity (within three months) to seven of these

complaints (Cases 2, 3, 4, 5, 6, 7, and 8).  See supra III(B)(4).  As no court in this district has

examined the temporal framework for a GINA claim, the Court will adopt the district's approach

under similar statutes, "follow[ing] a three-month rule to establish causation on the basis

of temporal proximity alone."  Dodson v. United States Capitol Police, 633 F. Supp. 3d 235

(D.D.C. 2022) (quoting McIntyre, 460 F. Supp. 2d at 133) (internal quotation marks omitted).

Therefore, temporal proximity is satisfied and the Court will allow Fisher's GINA retaliation

claim to proceed.

### 8.  *Count VII (Rehabilitation Act Claims)*

Count VII alleges harassment, discrimination, and retaliation based on disability under

the Rehabilitation Act.   Most of these allegations also fail to state a claim, although as with the

other statutes discussed previously, Fisher adequately pleads a claim of retaliation based on her

EEO complaints pertaining to her disability.

The Rehabilitation Act bars disability discrimination against federal employees.  29

U.S.C. § 791.  The Act "directs courts to employ the standards of the Americans with Disabilities

Act[.]"  Solomon v. Vilsack, 763 F.3d 1, 5 (D.C. Cir. 2014) (citing 42 U.S.C. §§ 12101 *et seq*).

Rehabilitation Act disability discrimination claims "can take one of four forms: (1) intentional

discrimination, otherwise known as disparate treatment; (2) disparate impact; (3) hostile work

environment; or (4) failure to accommodate."  Taylor v. Pompeo, No. 19-cv-2987 (CRC), 2021

WL 7904001, at *3 (D.D.C. Jan 6, 2021) (Cooper, J.) (citing Lee v. District of Columbia, 920 F.

---

[12]  The Court notes that the merits of Fisher's agency complaints are beside the point; it is the mere filing of the complaints that constitutes protected activity.

Supp. 2d 127, 132–33 (D.D.C. 2013)).  Fisher's complaint does not specify which of these claims she is asserting, but it appears to implicate disparate treatment and hostile work environment.[13]  It also alleges a retaliation claim.  2d Am. Compl. ¶ 798.

As a threshold matter, to proceed with a Rehabilitation Act claim, a plaintiff must have a disability within the meaning of the statute.  See Hodges v. District of Columbia, 959 F. Supp. 2d 148, 154 (D.D.C. 2013) (citing Duncan v. Wash. Metro. Area Transit Auth., 240 F.3d 1110, 1114 (D.C. Cir. 2001) (to prevail on a disability discrimination claim requires that a plaintiff "suffer[] an adverse employment action . . . because of the plaintiff's disability.").  For a finding of disability, "a major life activity must be 'substantially' limited, meaning that the limitation must be 'considerable' or 'specified to a large degree.'"  Brooks v. Clinton, 841 F. Supp 2d 287, 307–08 (D.D.C. 2012) (quoting Lytes v. D.C. Water and Sewer Auth., 527 F. Supp. 2d 52, 60 (D.D.C. 2007), aff'd sub nom. 572 F.3d 936 (D.C. Cir. 2009)).  Fisher's claimed disabilities appear to be light and noise sensitivities.  2d Am. Compl. ¶¶ 478, 516, 792.  Courts recognize severe light sensitivity as a disability within the ADA/Rehabilitation Act's definition.  See Weatherspoon v. Azar, 380 F. Supp. 3d 65, 68 (D.D.C. 2019); Adams v. California Prison Indus. Auth., No. 2:20-cv-1901-JDP-P, 2020 WL 5995020, at *2 n.2 (E.D. Cal. Oct. 9, 2020).  Courts have indicated that sufficiently severe noise sensitivity could also give rise to an ADA/Rehabilitation act claim, so the Court will assume as much here.  See Riley v. Potter, No. 8-cv-5167 (SDW)(MCA), 2011 WL 3841530, at *7 (finding that the plaintiff's sensitivity to noise did not give rise to a claim because he was not substantially limited by it).

---

[13]  Fisher has waived any failure to accommodate claim, noting that "the Administrative Judge issued an order in [her] favor for the protective glare screen issue in Case 4 (not part of this case)[.]"  2d Am. Compl. ¶ 686.

However, Fisher has not sufficiently pled that her major life activities have been substantially limited by these conditions.  The major life activities that could have been affected are seeing, hearing, and working, and it appears that, at least between 2001 and 2023, Fisher was able to see, hear, and work despite her claimed sensitivities.  See id. ¶¶ 9–683.  Restrictions to "sedentary or light duty are insufficient" to qualify as a substantial limitation.  Lytes, 527 F. Supp. 2d at 61 (D.D.C. 2007); see also Massaquoi v. District of Columbia, 81 F. Supp. 3d 44, 55 (D.D.C. 2015) (rejecting an ADA claim because an anxiety disorder does not substantially limit a major life activity).  In Weatherspoon, the court found that the plaintiff's light sensitivity substantially limited a major life activity because it made "it difficult for her to travel to her office and to read her computer screen."  380 F. Supp. 3d at 68.  Here, Fisher alleges that due to the lack of a protective glare screen for her computer (which she was ultimately provided, 2d Am. Compl. ¶ 515 n.7), "her eyes were burning, [and] she had difficulty seeing."  Id. ¶ 584.  But this is quite different from light sensitivity so severe that it prevents a plaintiff from going to work, as was the case in Weatherspoon.  Ultimately, Fisher does not allege substantial limitations on her daily activities, and so her assertions of disparate treatment and hostile work environment do not plausibly meet this first requirement.

### a.  Disparate Treatment

Even if Fisher's light or noise sensitivity placed a substantial limitation on her daily activities, she still fails to plead a plausible claim for disparate treatment.  Fisher does not identify a comparator who received accommodations when she did not or allege any other evidence of discrimination.  See Badwal v. Bd. of Trs. of Univ. of D.C., 139 F. Supp. 3d 295, 316 n.18 (D.D.C. 2015) ("While identifying a younger, but otherwise similarly situated comparator is a common way to demonstrate causation . . . such a showing is merely sufficient rather than

necessary." (internal citations and quotations omitted)).   As such, she cannot establish a claim of disparate treatment.

b.   <u>Hostile Work Environment</u>

Fisher's complaint likewise lacks sufficient facts to allege a plausible Rehabilitation Act hostile work environment claim.  To establish a hostile work environment claim, a plaintiff "must allege facts demonstrating that: (1) she is disabled or is perceived as disabled; (2) she was subjected to unwelcome harassment; (3) the harassment occurred because of her disability or the perception that she was disabled; (4) the harassment affected a term, condition, or privilege of employment; and (5) there is a basis for holding the employer liable for the creation of the hostile work environment."  <u>Floyd v. Lee</u>, 968 F. Supp. 2d 308, 326 (D.D.C. 2013) (citation omitted).  Again, even if the Court assumes that Fisher's conditions qualify as disabilities, she fails to present any facts supporting allegations of unwelcome harassment.  The conduct Fisher identifies as harassment based on light sensitivity is that supervisors resisted giving her an anti-glare screen.  <u>See</u> 2d Am. Compl ¶ 585.  But that is not harassment; it is, if anything, a failure to accommodate, a claim Fisher has disavowed.  <u>See</u> *supra*, n. 13.  Further, Fisher does not allege that her request for anti-glare screens generated hostility that affected the conditions of her employment.

As for Fisher's noise sensitivity, the Court discerns only one potentially pertinent allegation in the relevant time period:  that a co-worker "loudly banged an umbrella with a wood base hard on the concrete flooring outside [Fisher's] bay door[.]"  2d Am. Compl. ¶ 571.  Even in the most favorable light, this contention does not establish that Fisher's colleagues perceived her as disabled due to noise sensitivity, that they engaged in severe and pervasive harassment, or that a connection exists between any harassment and Fisher's noise sensitivity.  Though a "single

incident might well [be] sufficient to establish a hostile work environment," banging an umbrella on the floor surely does not rise to that level.  Cf. Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 577 (D.C. Cir. 2013) (suggesting that a "deeply offensive racial epithet" might qualify to make such a claim in the Title VII context).  Accordingly, Fisher fails to plead a harassment claim based on either of her sensitivities.

### c.  Retaliation

As with her ADEA, Title VII, and GINA claims, Fisher states a claim, at least at this early stage of the case, for Rehabilitation Act retaliation under a temporal proximity theory.  The Rehabilitation Act bars discrimination against anyone who "opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under the [ADA]."  42 U.S.C. § 12203(a).  To advance a Rehabilitation Act retaliation claim, a plaintiff must show that "(i) she engaged in statutorily protected activity; (ii) she suffered a materially adverse action by her employer; and (iii) a causal link connects the two."  Doak v. Johnson, 798 F.3d 1096, 1107 (D.C. Cir. 2015) (quoting Solomon, 763 F.3d at 14) (cleaned up).  As with the other statutes, temporal proximity of less than three months is sufficient to establish a causal connection in the ADA context.  See Dougherty v. Cable News Network, 396 F. Supp. 3d 84, 104 (D.D.C. 2019) (citing Carney v. American Univ., 151 F.3d 1090, 1095 (D.C. Cir. 1998)).

Of Fisher's seven relevant EEO actions, all have allegations about disability discrimination.  See 2d Am. Compl. ¶¶ 473, 491, 549, 564, 587, 633; Def.'s Mot. at 3, 5, 7, 9, 12, 17;  Def.'s Reply at 3.  Fisher has sufficiently pled retaliation claims stemming from six of those actions (Cases 2, 3, 5, 6, 7, and 8) due to temporal proximity between the claim and adverse employment action taken shortly thereafter.  See supra IV(e).  Therefore, the Court will permit Fisher's Rehabilitation Act retaliation claim to proceed to discovery.

### 9. *Count VIII (§1983 Claim)*

Finally, in Count VIII, Fisher claims deprivations of her constitutional rights in contravention of 42 U.S.C. § 1983.

Section1983 provides a remedy for civil rights violations by state and local officials. It does not provide a remedy for actions brought against federal officials or agencies, however. Williams v. United States, 396 F.3d 412, 415–16 (D.C. Cir. 2005). The defendant in this suit is a federal official, acting in that capacity. 2d Am. Compl at 1–2. And "[w]hile federal officials may be liable under § 1983 provided they acted in concert with state officials[,]" there is no suggestion of that in Fisher's complaint. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982). As such, Fisher cannot assert a § 1983 claim against the Secretary of the Treasury.

While the complaint itself is silent on the issue, Fisher gestures in her opposition to a constitutional claim under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). See Pl.'s Opp'n at 7, 20. But even if the Court were to consider this claim in light of Fisher's pro se status, it would fail. The Supreme Court has explicitly rejected expanding Bivens into the federal employment context. Bush v. Lucas, 462 U.S. 367, 386–90 (1983) (noting that Congress has established a system of civil service remedies to address federal employment problems). This holding bars any Bivens-type action here.

Since Fisher pleads neither a Bivens claim nor a § 1983 claim, she fails to state a claim in Count VIII.

## IV.    Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Equal Pay Act claim be transferred to the Court of Federal Claims. It is further

**ORDERED** that Defendant's [26] Motion to Dismiss under Rule 8(a) or Motion to Strike under Rule 12(f) is DENIED. It is further

**ORDERED** that Defendant's [26] Motion to Dismiss under Rule 12(b)(6) is GRANTED as to: (1) the entirety of Plaintiff's harassment and discrimination claims under the ADEA and GINA; (2) Plaintiff's Title VII discrimination claims except as to her alleged March 2021 rejection for the Assistant Branch Manager position; (3) the entirety of Plaintiff's Title VII hostile work environment and harassment claims; (4) the entirety of Plaintiff's Rehabilitation Act hostile work environment and disparate treatment claims; and (5) Plaintiff's § 1983/<u>Bivens</u> claim.  Those claims are therefore DISMISSED. It is further

**ORDERED** that Defendant's [26] Motion to Dismiss under Rule 12(b)(6) is DENIED as to Plaintiff's Title VII, ADEA, ADA, and GINA retaliation claims as well as the aforementioned Title VII claim concerning her alleged March 2021 rejection for the Assistant Branch Manager position. It is further

**ORDRED** that to promote the ease of further litigation, Plaintiff shall, by October 30, 2025, file a third amended complaint that includes only the claims and supporting allegations that have survived dismissal.[14] It is further

**ORDERED** that the Defendant shall answer or otherwise respond to the Plaintiff's third amended complaint within 30 days of its filing.

---

[14] The paragraphs from the "Facts in Common" section of Plaintiff's complaint that survive are, for her retaliation claims, as follows.  Case 2: 2d Am. Compl. ¶¶ 491, 503.  Case 3: <u>Id.</u> ¶¶ 491, 511, 517–18.  Case 4: <u>Id.</u> ¶¶ 545, 548, 550–551.  Case 5: <u>Id.</u> ¶¶ 549–51.  Case 6: <u>Id.</u> ¶¶ 566–69, 571, 574.  Case 7: <u>Id.</u> ¶¶ 587, 590, 593, 604.  Case 8: <u>Id.</u> ¶¶ 633, 639, 641–43.

For the sole surviving Title VII discrimination claim, the surviving allegations are found in ¶¶ 209, 296, 308, 335, 384, which describe Mr. Hirschhorn's alleged role in alleged gender-based harassment, and ¶¶ 569, 571, which describe the events surrounding Fisher's rejection for the Assistant Branch Manager role.

**SO ORDERED.**

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>September 30, 2025</u>